UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal Case No. 08-101 (JDB) |
| | : | |
| QUENTON LOFTON, | : | |
| | : | |
| Defendant. | : | Motions Hearing: July 1, 2008 |
| | : | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S
MOTION TO SUPPRESS PHYSICAL EVIDENCE**

The government relies upon the points and authorities set out in this memorandum and at any hearing on this matter.

Defendant's motion must be denied for any one of three bases. First, the <u>defendant is without standing</u> to bring this motion, because he had no reasonable expectation of privacy in the areas searched. The vehicle in question did not belong to the defendant, and at the start of his conversation with police at the scene, the defendant immediately disavowed any possessory interest in the vehicle. Unless defendant can establish the appropriate reasonable expectation of privacy, defendant's motion is moot.

Second, even if the defendant could show a sufficient expectation of privacy, his motion must fail because the search was conducted with the <u>valid consent</u> of the owner of the vehicle.

And last, even absent the owner's consent, the <u>officers' actions were constitutionally sound</u> as to their contacts with the defendant, and their subsequent search of the vehicle.

There was no infirmity with defendant's initial contact because at the outset, officers simply approached him and initiated a conversation. Nor does it matter whether the officers'

subjective intent may have been to look for indicia of drugs or other criminal involvement, because an officer's subjective intentions are irrelevant in assessing the propriety of a contact, even where such a contact leads to (or includes) a detention. Whren v. United States, 517 U.S. 806, 810 (1996). Once the officers engaged the defendant in conversation, they quickly made several observations that heightened their interest in the defendant. Officer Fultz, an officer with years of experience in the investigation of narcotics and dangerous drug crimes, saw what appeared to be a hand-rolled "blunt" style of marijuana cigarette in the ashtray of the vehicle. This fact, in combination with the officers' initial observation of the defendant's suspicious behavior in moving himself from the passenger seat to the driver's seat when he first saw the police arrived on the scene, and the defendant's subsequent statement that the vehicle was not his, and that he had no license, was enough to give experienced officers probable cause to search the vehicle. (*United States v. Russell*, 655 F.2d 1261 (D.C. Cir., 1981); *United States v. Turner*, 119 F.3d 18, 20 (D.C. Cir. 1997). In addition though, officers noticed his extreme nervousness at the initial contact, and Officer Fultz saw him furtively move an unidentified black object into the console of the vehicle. The officers asked the defendant to step out of the car, and he was briefly detained at the rear of the Prism. At this point, prior to any officer entering the vehicle, Letticia Waites, the owner of the Prism, returned to the vehicle. When officers told her that they had seen some narcotics inside the vehicle, she gave the officers her consent to search the vehicle. The officers then had full authority to conduct the search to which the defendant now objects. (*Scheckloth v. Bustamonte*, 412 U.S. 218; *Florida v. Jimeno*, 500 U.S. 248 (1991). Even if, as anticipated, the defendant contests the validity of Ms. Waites' consent, the officers were independently within their authority to conduct a limited search of the interior of the vehicle

where the defendant had been seated. While the government position is that, at this point, the officers had valid consent to search the vehicle, it is also clear that, having seen the defendant nervously place an unidentified black object in the console of the car when the police approached him, a "pat down" of this area for officer safety was well-justified. (*Michigan v. Long*, 463 U.S. 1032 (1983); *Pennsylvania v. Mimms*, 434 U.S. 106 (1977)). It was during this initial "pat down" of the vehicle that Officer Fultz confirmed the nature of the blunt, found additional packages of marijuana in Ms. Waites' open purse, and identified the black object as being a bottle of suspected PCP in a black sock. Having recovered both the suspected PCP and the marijuana blunt, the officers clearly had probable cause to arrest the defendant.

I.      **FACTS**

The defendant is charged in a two-count indictment with drug charges stemming from his constructive possession of PCP and marijuana found in his girlfriend's car, in which he was the sole occupant of the vehicle when it was first seen parked in an alley behind the 200 block of I Street, S.W., Washington, D.C.

On March 15, 2008, at approximately 8:25 p.m., Metropolitan Police Department NSID-GRU Officers drove into an alley next to some apartment buildings in the 200 Block of I Street, S.W., Washington, D.C. When the officers drove into the alley, they saw an individual standing in the alley with his hands in his waistband. The officers decided to speak with that individual, and as they drove toward him, they passed a white Chevy Prism that was parked in the alley with an individual seen sitting in the passenger seat.[1] One of the officers got out of the police car and

---

[1] This individual was subsequently identified as the defendant in this case, Quenton Lofton.

spoke with the individual in the alley and determined that an object the officers had seen in his hands was an iPod. At about that time, officers noticed the defendant move from the front passenger seat of the Prism into the driver's seat. The officers decided to make contact with the defendant, and one of the officers walked up to the driver's side of the Prism while another officer pulled stood by the passenger's side window.

The officer on the driver's side asked the defendant if he could speak with the defendant, and the defendant replied, "Yeah Man, I wasn't driving, I am just waiting for my girl, and I don't have a driver's license." Officers noticed that the defendant was extremely nervous and was constantly moving his hands as he spoke. The officer next to the passenger side shined a flashlight into the car and noticed that there was a hand-rolled "blunt" in the ashtray under the dash board, and saw the defendant slide a black object into the open area of the center console. The officer on the passenger side signaled the officer on the driver's side to get the defendant out of the car. Officers removed the defendant from the car and had him stand near the rear of the car.

At that moment the defendant's girlfriend, Letticia Waites, approached the officers. One of the officers told her that there were some narcotics in her automobile. At the officer's request, Ms. Waites consented to a search of the car. One of the officers entered the Prism and recovered the black object from the center console and determined that it was a black sock that contained an 8 ounce lime juice bottle filled with PCP. A prescription bottle in the defendant's name was also recovered from the center console next to the bottle of PCP. In addition to the PCP, officers recovered an unlit hand-rolled, suspected marijuana blunt from the ash tray in the dash board, two ziplock bags of suspected marijuana (approximate weight 6 grams) in Waites' open,

-4-

unzipped purse, which was lying on the driver's seat, and 11 empty glass vials in a black plastic bag on the back seat. As officers were finishing the search, the defendant made a spontaneous statement that everything in the car was his. When one of the officers asked about the marijuana though, the defendant said that he did not know anything about the marijuana. Defendant was then placed under arrest.

Ms. Waites subsequently confirmed that the Prism was hers, and that she doesn't let anyone else drive the car.

Defendant now complains that the evidence seized must be suppressed, alleging that the police conducted a warrantless search of the automobile in which he was sitting, and that the search in question did not fall under any exception to the warrant requirement. Because this argument is supported by neither law nor fact, defendant's motion must be denied.

**II.    ARGUMENT**

### THE DEFENDANT HAS THE BURDEN OF DEMONSTRATING A LEGITIMATE EXPECTATION OF PRIVACY IN THE PROPERTY SEIZED OR THE PLACE SEARCHED

Fourth Amendment rights are personal rights which may be asserted only by a defendant who has a legitimate expectation of privacy in the invaded place or the thing searched. (*Rakas v. Illinois* 439 U.S. 128, 133-134, 143 (1978).) Thus, to succeed on a motion to exclude evidence based on a claim of unreasonable search and seizure, the defendant must first establish a personal, reasonable, and legitimate expectation of privacy in the particular area searched or thing seized. (*United States v. Payner* 447 U.S. 727, 731 (1980).) The defendant bears the burden of showing a legitimate expectation of privacy. This burden requires the defendant to show two things. First, the defendant must hold an actual (subjective) expectation of personal

privacy. Second, this expectation must be one that society is prepared to recognize as reasonable. In other words, the defendant's subjective expectation of privacy must be objectively reasonable under the circumstances. (*Smith v. Maryland* 442 U.S. 735, 740 (1979).)

The courts have specifically rejected several theories advanced to broaden the legitimate expectation of privacy of defendants whose personal rights have not been violated by police conduct. For example, mere presence at the search scene does not establish a defendant's legitimate expectation of privacy. (*Rakas v. Illinois*, supra, 439 U.S. at pp. 140-142; *Minnesota v. Carter* 525 U.S. 83 (1998).) Nor does the defendant gain an expectation of privacy simply because he or she is charged with possession of the property sought to be suppressed. (*United States v. Salvucci* 448 U.S. 83, 85 (1980).) Even the defendant's ownership of the property itself is insufficient to create a legitimate expectation of privacy. (*United States v. Salvucci*, supra.)

Being the "target" of an investigation does not create a legitimate expectation of privacy for a defendant. (*Rakas v. Illinois*, supra, at p. 135.) Nor does conspiring with, or being married to, one whose property is searched. (*United States v. Padilla* 508 U.S. 77 (1993) .) Even grossly unreasonable police conduct, as in secretly intercepting a briefcase belonging to a third party and copying its contents, cannot alter the defendant's need to show the conduct violated his or her personal, reasonable and legitimate expectation of privacy. (*United States v. Payner*, supra, 447 U.S. 727.)

As a mere passenger in the subject vehicle, the defendant in this case has no expectation of privacy in the vehicle. In the leading case of *Rakas v. Illinois* 439 U.S. 128 (1978) , police stopped a vehicle driven by robbery suspects, searched their car, and found bullets in the glove compartment and a firearm under the front passenger seat. The Court held the passengers had no

legitimate expectation of privacy in the car because they (1) neither owned nor leased the car, and (2) did not assert any interest (e.g., ownership) in the items seized.  The Court wrote:

> Judged by the foregoing analysis, petitioners' claims must fail.  They asserted neither a property nor a possessory interest in the automobile, nor an interest in the property seized.  And as we have previously indicated, the fact that they were "legitimately on [the] premises" in the sense that they were in the car with the permission of its owner is not determinative of whether they had a legitimate expectation of privacy in the particular areas of the automobile searched.

(*Id.* at p. 148.)

Similarly, in the present case, the defendant was simply a passenger in the vehicle.  While the officers did see the defendant move from the passenger seat into the driver's seat, the defendant dispelled any question of his relationship to the vehicle at his initial contact with Officer Smith.  When the officer asked to speak with the defendant, the defendant stated right away that the car was not his, and that he did not have a driver's license.  Defendant cannot now claim a privacy interest in the vehicle or its contents.

## THE SEARCH WAS CONDUCTED WITH THE VALID CONSENT OF THE OWNER OF THE VEHICLE

Voluntary consent to search permits an officer to search without a warrant and establishes the reasonable nature of the search.  Consent to search is not a waiver of one's constitutional rights. (*Schneckloth v. Bustamonte* 412 U.S. 218, 243-246 (1973).)  Therefore, the Fourth Amendment does not require that a defendant be advised of *Miranda* rights, or of the right to refuse permission.  While the absence of such warnings, or the fact that a defendant is in custody, may be taken into consideration, they do not establish that a consent was not voluntarily given.  (*Schneckloth v. Bustamonte*, *supra*, at

p. 246-249.) Similarly, the defendant need not be told that a detention has ended and he or she is free to go before a post-detention consent may be deemed voluntary. (*Ohio v. Robinette* 519 U.S. 33 (1996).)

Consent to search must be voluntary and freely given rather than a mere submission to express or implied authority, duress or coercion. Voluntariness is a question of fact to be resolved by considering all the surrounding circumstances. (*Schneckloth v. Bustamonte*, *supra*, 412 U.S. at pp. 248-249.)

Just as the officers asked the defendant to step out of the vehicle, Letticia Waites – the person the defendant acknowledged as the owner of the vehicle – arrived on the scene. Officers told her that they had seen illegal narcotics in the car, and asked her if they could search the car, and she said that they could.

### THE INITIAL CONTACT WAS NOT A DETENTION

Not all street encounters between citizens and police officers are "seizures" implicating the Fourth Amendment. A "seizure" occurs only "when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen . . . ." (*Terry v. Ohio*, 392 U.S. 1, 19, fn. 16 (1968) .) "If a reasonable person would feel free to terminate the encounter, then he or she has not been seized." (*United States v. Drayton* 536 U.S. 194, 201 (2002).)

Clearly, a police officer may approach and talk to anyone in a public place. The officer may suspect the person being addressed is involved in criminal activity or has witnessed a crime.

Or the officer may be performing one of the many miscellaneous police tasks having nothing to do with crime detection, such as giving aid to persons in distress, mediating domestic quarrels, assisting the elderly or the disabled, furnishing traffic advice or directions, and generally preserving the peace and protecting persons from harm or annoyance.

If the person cooperates with the officer, their contact is a consensual encounter for which no reasonable suspicion is required. A detention occurs only if the person contacted is not free to leave at will because of some physical restraint, threat of force, or assertion of authority by the officer.

In *Florida v. Royer* 460 U.S. 491 (1983), the Court spoke at length distinguishing between detentions and consensual encounters. The court wrote:

> "[L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions. [Citation.] Nor would the fact that the officer identified himself as a police officer, without more, convert the encounter into a seizure requiring some level of objective justification. [Citation.] The person approached, however, need not answer any question put to him; indeed, he may decline to listen to the questions at all and may go on his own way."

(*Florida v. Royer*, *supra* at p. 497.)

The test used to determine whether a person has been detained is as follows: "a court must consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter." (*Florida v. Bostick* 501 U.S. 429, 439 (1991); *United States v. Mendenhall* 446 U.S. 544, 554 (1980).)

Among the circumstances that might indicate a detention, even where the person did not attempt to leave, are the threatening presence of several officers, an officer's display of a weapon,

-9-

some physical touching of the citizen's person, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled. (*United States v. Mendenhall, supra,* 446 U.S. at p. 554.)

An officer's subjective intent to detain had the person tried to leave is irrelevant except insofar as it may have been conveyed to the person. So, too, is the person's subjective belief. (*Id.* at p. 554, fn. 6.) The reasonable person test is judged from the viewpoint of an innocent person. (*Florida v. Bostick*, *supra*, 501 U.S. at p. 438.) The person must have an objective reason to believe that he or she was not free to end the conversation and proceed one's way. (*United States v. Mendenhall, supra,* 446 U.S. at p. 555.)

### THE HAND-ROLLED MARIJUANA BLUNT FOUND IN THE ASHTRAY WAS IN PLAIN VIEW

The "plain view" exception to the Fourth Amendment warrant requirement permits a law enforcement officer to seize what clearly is incriminating evidence or contraband when it is discovered in a place where the officer has a right to be. *Coolidge v. New Hampshire*, 403 U.S. 443 (1971); *Harris v. United States*, *390 U.S. 234 (1968)* It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to [search and] seizure and may be introduced in evidence." (*Harris, supra,* at 236).

Here, as Officer Fultz was standing outside the passenger side window of the White Chevy Prism, he could see the hand-rolled blunt in the ashtray of the car; and as Officer Smith spoke to the defendant, Officer Fultz saw the defendant nervously move a black sock into the center console of the car. The officer had the right to stand where he was standing, and was well within his rights (as would any citizen be) to look into the window of the Prism. Thus, Officer

Fultz' observations do not constitute a warrantless search as might be prohibited by the Fourth Amendment.

### THE OFFICERS HAD REASONABLE CAUSE TO DETAIN THE DEFENDANT

Circumstances amounting to a reasonable suspicion, but falling short of probable cause to arrest, justify a police officer detaining a person who may be involved in criminal activity. The criminal activity may be past, present or future. (*United States v. Sokolow* 490 U.S. 1, 7-8 (1989); *Terry v. Ohio* 392 U.S. 1, 22 (1968).)

"The concept of reasonable cause . . . is not 'readily, or even usefully, reduced to a neat set of legal rules.' " (*United States v. Sokolow*, *supra*, 490 U.S. at pp. 7-8.) Reasonable cause demands some minimum level of objective justification, but considerably less than is required for probable cause to arrest. Indeed, the justification standard is less than a preponderance of the evidence. (*Ibid.*; *United States v. Arvizu* 534 U.S. 266, 274 (2002).) Reasonable cause to detain must be supported by specific articulable facts, rather than inchoate suspicion or hunch. (*United States v. Sokolow*, *supra*, 490 U.S. at pp. 7-8.) These facts can be drawn from an officer's personal observations, citizen reports, or reports of other officers. The facts must be evaluated in light of the officer's specialized training and experience. (*United States v. Mendenhall* 446 U.S. 544, 563-564 (1980) (Powell, J., concurring); *Terry v. Ohio*, *supra*, 392 U.S. 1.) An experienced officer may draw inferences and make deductions from observed fact that might well elude an untrained person. (*United States v. Cortez* 449 U.S. 411, 418 (1981).)

Whether specific articulable facts amount to reasonable cause depends on the totality of the circumstances. Although each fact alone may be inadequate, together they can constitute

reasonable cause. (*United States v. Sokolow*, *supra*, 490 U.S. at pp. 8-9)  The court should not evaluate each factor in isolation from the rest.  Indeed, the totality of the circumstances test bars judicial divide-and-conquer analysis. (*United States v. Arvizu*, *supra*, 535 U.S. at pp, 274-275.) Among the relevant circumstances, beyond the activity observed or reported, are the characteristics and reputation of the area, the time of day, and lighting conditions.  Nervous, evasive behavior is also a relevant factor.  And a suspect's flight from approaching officers—the consummate act of evasion—can be a key factor in establishing reasonable suspicion. (*Illinois v. Wardlow* 528 U.S. 119, 124-126 (2000); *United States v. Mendenhall*, *supra*.)

      Indeed, in *Wardlow* the United States Supreme Court upheld a detention based on the suspect's presence in an area known for heavy narcotics trafficking coupled with his unprovoked, headlong flight upon seeing police on patrol.  The court reaffirmed that one has a right to ignore the police and go about one's business when police approach to initiate an encounter.  And any mere refusal to cooperate does not contribute to cause to detain.  "But unprovoked flight is simply not a mere refusal to cooperate.  Flight by its very nature is not 'going about one's business'; in fact, it is just the opposite." (*Illinois v. Wardlow*, *supra*, 528 U.S. at p. 125.)

      It is immaterial that there might be some innocent explanation for the activities witnessed by the police officer.  Even innocent behavior will frequently provide reasonable cause to detain. The test is not whether the conduct observed is "innocent" or "guilty," rather it is " 'the degree of suspicion that attaches to particular types of noncriminal acts.' " (*United States v. Sokolow*, *supra*, 490 U.S. at pp. 9-10; *United States v. Arvizu*, *supra*, 535 U.S. at pp. 277-278.)  Indeed, one function of a temporary detention is to resolve any ambiguity in the situation and to find out whether the activity was in fact legal or illegal.

      In the present case, Officers saw the defendant move into the driver's seat when they first

arrived on the scene, before they even approached the car.  And yet, at the initial consensual contact, the defendant immediately told the officers that the car was not his, and that he was not licensed to drive.  At about the same time, Officer Fultz, an officer with extensive experience handling drug cases, saw an apparently hand-rolled blunt in the ashtray of the vehicle.  Based on his training and experience, Officer Fultz immediately suspected that the blunt contained marijuana.  Both officers noticed that the defendant was very nervous, and Officer Fultz saw the defendant move an unidentified black object into the center console of the vehicle.  On these observations – especially the visible suspected marijuana cigar – the officers clearly had (at least) reasonable suspicion that a crime had been committed and they would have been derelict had they not pressed their investigation further.

### AT THE TIME OF THE SEARCH, OFFICERS HAD PROBABLE CAUSE TO ARREST THE DEFENDANT

Once the officers made contact with defendant at the parked vehicle, they quickly saw the hand-rolled marijuana blunt in the ashtray of the vehicle, and at that point, they had probable cause to search the vehicle.  In *United States v. Russell*, 655 F.2d 1261 (D.C. Cir., 1981), when the defendant Russell opened a glove compartment, one of the officers saw in plain view two packets that, to his trained eye, signaled the presence of heroin and marijuana.  Defendant Russell attempted to close the glove compartment lid on the officer's hand, heightening the officers' suspicion that the packages contained contraband.  The court considered the significant experience of the officer making the observations, found that "Together, these circumstances gave the officers probable cause to believe that drugs were in the car and, therefore, to search the car without a warrant."  *Id*, at 1263.

Similarly, numerous cases have found that the mere smell of marijuana is sufficient basis on which to establish probable cause to conduct a search. In United States v. Ross, 456 U.S. 798 (1982), the Supreme Court held that where officers have probable cause to believe that a vehicle contains contraband, they may search it as thoroughly as if a magistrate had authorized the search by warrant. Several courts have upheld searches of the entire vehicle upon the establishment of probable cause that marijuana may be found inside of it. See, e.g. United States v. Turner, 119 F.3d 18, 20 (D.C. Cir. 1997) (smell of burnt marijuana emanating from car, along with pieces of torn cigar paper and zip of green weed, supported search of vehicle, including trunk); see also United States v. Zabalza, 346 F.3d 1255, 1259 (10th Cir. 2003) (smell of marijuana supported search of vehicle, including trunk); United States v. Peltier, 217 F.3d 608, 610 (8th Cir. 2000) (smell of marijuana supported search of vehicle); United States v. Taylor, 162 F.3d 12, 21 (1st Cir. 1998) (smell of marijuana supported search of vehicle); United States v. Reed, 882 F.2d 147, 149 (5th Cir. 1989) (smell of marijuana "in itself" supported search of vehicle).

In the present case, a very experienced officer saw a hand-rolled suspected marijuana blunt in plain view at the initial contact with the defendant. That observation, in combination with the defendant's suspicious behavior (moving to the driver's seat when officers arrived, nervousness, furtively moving an unidentified object into the console) were sufficient to give officers probable cause to conduct a search of the interior of the vehicle. Whereupon the officers quickly found the marijuana blunt, the packages of additional marijuana, and the bottle of PCP.

## AT THE TIME OF THE SEARCH, OFFICERS HAD REASONABLE CAUSE TO CONDUCT A LIMITED "PAT DOWN" OF THE IMMEDIATE AREA

In *Terry v. Ohio* (1968) 392 U.S. 1, the Supreme Court held that a police officer may conduct a patdown search for weapons when the officer has reason to believe, based on the totality of the circumstances, that the suspect is armed and dangerous, regardless of whether probable cause to arrest exists. The officer need not be absolutely certain that the individual is armed, but must be able to articulate specific facts that, along with any rational inferences, lead to a reasonable suspicion the suspect is armed and dangerous. The issue is whether a reasonable prudent person in the same circumstances would be justified in the belief that his or her safety or that of others was in danger. (*Id.* at pp. 21, 27.)

In the present case, officers saw the defendant's nervousness, his suspicious behavior in changing seats, and the blunt in the ashtray. They also saw the defendant move an unidentified black object into the console next to his right hand. At that point, it was entirely appropriate for officers to conduct a "pat-down" of the vehicle for officer safety. When, upon entry of the vehicle, officers saw, in addition to the blunt in the ashtray, two bags of apparent marijuana in the open handbag that was on the center console, they had sufficient cause to arrest both the defendant and Ms. Waites, and to conduct a full search of their persons and the vehicle incident to that arrest.

WHEREFORE, the government respectfully requests that the Court deny defendant's motion.

                Respectfully submitted,

                JEFFERY A. TAYLOR
                United States Attorney

                /s/ William L. Woodruff
                WILLIAM L. WOODRUFF
                Assistant United States Attorney
                Federal Major Crimes Section
                DC Bar number: 481-039
                555 4th Street, N.W.  #4840
                Washington, DC 20530
                (202) 307-6080; Fax: 353-9414
                William.Woodruff2@usdoj.gov

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | |
| : | **CRIMINAL NO. 08-101 (JDB)** |
| v. : | |
| : | |
| **QUENTON LOFTON,** : | |
| : | |
| **Defendant.** : | |

# ORDER

Upon consideration of the Defendant's Motion to Suppress Tangible Evidence and Statements, and the United States Opposition thereto, and the record herein, it is this _____ day of _____, 2008, hereby

ORDERED, that defendant's motion be denied.

_____
UNITED STATES DISTRICT JUDGE