UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal Case No. 08-101 (JDB) |
| | : | |
| QUENTON LOFTON, | : | |
| | : | |
| Defendant. | : | Trial date: August 20, 2008 |
| | : | |

GOVERNMENT'S RESPONSE TO
DEFENDANT'S MOTION TO SUPPRESS STATEMENTS

The government relies upon the points and authorities set out in this memorandum and at any hearing on this matter.

In this case, the defendant moves to suppress certain statements made by him in the presence of police officers at or near the time of his arrest. In support of his motion, defendant claims that the statements were the result of custodial interrogation conducted without the benefit of an advice of rights as required by *Miranda v. Arizona*[1]. Because the defendant made several statements under a variety of circumstances, and because defendant's motion makes no effort to distinguish those statements, this response lists key statements that are representative of the several circumstances that occurred during the course of this investigation.[2]

Most of the conversation between the defendant and officers at the scene came in the course of an initial consensual encounter. Officer Smith made this initial contact with the

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[2] It seems likely that defendant's motion targets a particular statement he made after the car was searched. In that statement, knowing that drugs had been found by police, the defendant said, "everything in the car is mine." Because defendant's motion is not expressly limited to that particular statement though, the government responds somewhat more broadly.

defendant as the defendant was sitting in the driver's seat of the white Prism. During this initial contact, the defendant made statements that the car belonged to his girlfriend who would be back in a few minutes, and that he did not have a driver's license. A short time later, at the defendant's initial detention (but prior to custody sufficient to trigger the prophylactic warnings suggested by *Miranda*) the defendant made a spontaneous statement to police. As he was being escorted to the rear of the vehicle, the defendant saw his girlfriend, Letticia Waites, returning to the vehicle. At that point the defendant identified her as his girlfriend, and reiterated that the car was hers. Defendant's motion to suppress these pre-arrest statements of the defendant is without merit because *all* of these statements were made prior to the defendant being placed in custody equivalent to arrest, and therefore, *Miranda* does not apply. Furthermore, of the statements noted, the only statements made during the defendant's initial detention were the spontaneous statements identifying his girlfriend. These statements lack both the custody and the interrogation elements needed to trigger the provisions of *Miranda*.

After the defendant's initial detention, officers searched the car and found various items of contraband drugs. When the defendant saw officers retrieving the drugs from the car, he spontaneously said, "everything in the car is mine." At that point, the defendant was arrested, and was admittedly in custody withing the meaning of *Miranda*. At the time of his arrest, the defendant was read the standard four-part *Miranda* warning, after which officers asked him a few follow-up questions about the drugs found in the car. Because the defendant was properly advised of his rights, because he verbally acknowledged and waived these rights, these statements also need not be suppressed.

I.  **FACTS**

The defendant is charged in a two-count indictment with drug charges stemming from his constructive possession of PCP and marijuana found in his girlfriend's car, in which he was the sole occupant of the vehicle when it was first seen parked in an alley behind the 200 block of I Street, S.W., Washington, D.C.

On March 15, 2008, at approximately 8:25 p.m., Metropolitan Police Department NSID-GRU Officers drove into an alley next to some apartment buildings in the 200 Block of I Street, S.W., Washington, D.C. When the officers drove into the alley, they saw an individual standing in the alley with his hands in his waistband. The officers decided to speak with that individual, and as they drove toward him, they passed a white Chevy Prism that was parked in the alley with an individual seen sitting in the passenger seat.[3] One of the officers got out of the police car and spoke with the individual in the alley and determined that an object the officers had seen in his hands was an iPod. At about that time, officers noticed the defendant move from the front passenger seat of the Prism into the driver's seat. The officers decided to make contact with the defendant, and one of the officers walked up to the driver's side of the Prism while another officer stood by the passenger's side window.

The first statements made by the defendant came when the officer on the driver's side asked the defendant if he could speak with the defendant, and the defendant replied, "Yeah Man, I wasn't driving, I am just waiting for my girl, and I don't have a driver's license." Officers noticed that the defendant was extremely nervous and was constantly moving his hands as he

---

[3]This individual was subsequently identified as the defendant in this case, Quenton Lofton.

spoke. The officer next to the passenger side shined a flashlight into the car and noticed that there was a hand-rolled "blunt" in the ashtray under the dash board, and saw the defendant slide a black object into the open area of the center console. The officer on the passenger side signaled the officer on the driver's side to get the defendant out of the car. Officers removed the defendant from the car and had him stand near the rear of the car.

The next statements by the defendant came as he was being escorted to the rear of the car. At that moment the defendant's girlfriend, Letticia Waites, approached the officers. The defendant immediately identified her has his girlfriend, and the owner of the car.

One of the officers told her that there were some narcotics in her automobile. At the officer's request, Ms. Waites consented to a search of the car. One of the officers entered the Prism and recovered the black object from the center console and determined that it was a black sock that contained an 8 ounce lime juice bottle filled with PCP. A prescription bottle in the defendant's name was also recovered from the center console next to the bottle of PCP. In addition to the PCP, officers recovered an unlit hand-rolled, suspected marijuana blunt from the ash tray in the dash board, two ziplock bags of suspected marijuana (approximate weight 6 grams) in Waites' open, unzipped purse, which was lying on the driver's seat, and 11 empty glass vials in a black plastic bag on the back seat.

The third group of statements, and the only statements made after the defendant's arrest, were made just as officers were finishing the search of the car. At that point, the defendant made a spontaneous statement that everything in the car was his. When one of the officers asked about the marijuana though, the defendant said that he did not know anything about the marijuana. Defendant was then placed under arrest.

Ms. Waites subsequently confirmed that the Prism was hers, and that she doesn't let anyone else drive the car.

Defendant now complains that some or all of his statements must be suppressed, alleging that the statements were all made in violation of Miranda. Because this argument is supported by neither fact nor law, defendant's motion must be denied.

II. **ARGUMENT**

### THE DEFENDANT'S SPONTANEOUS STATEMENTS, DO NOT IMPLICATE *MIRANDA*

*Miranda* warnings must only be given when a suspect is both in custody ***and subject to interrogation***. "[By] custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). The Supreme Court has noted:

> The *Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. That is to say, the term "interrogation" under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect. The latter portion of this definition focuses primarily upon the perceptions of the suspect, rather than the intent of the police. This focus reflects the fact that the *Miranda* safeguards were designed to vest a suspect in custody with an added measure of protection against coercive police practices, without regard to objective proof of the underlying intent of the police. A practice that the police should know is reasonably likely to evoke an incriminating response from a suspect thus amounts to interrogation. But, since the police surely cannot be held accountable for the unforeseeable results of their words or actions, the definition of interrogation can extend only to words or actions on the part of police officers that they should have known were reasonably likely to elicit an incriminating response.

*Rhode Island v. Innis*, 446 U.S. 291, 301-02 (1980) (footnotes omitted).

Therefore, a spontaneous statement is admissible, whether it is made before or after arrest, regardless of the presence or lack of *Miranda* warnings.  See *United States v. Samuels*, 938 F.2d 210, 214 (D.C. Cir. 1991); *United States v. Gonzalez*, 875 F.2d 875, 881 (D.C.Cir.1989).

In summary, even where a defendant may be in custody at the time he made the challenged statement, if he was not being questioned by the police, his statements need not be suppressed.  In the present case, the defendant made spontaneous statements in two instances.  First, at the defendant's intial detention, when the defendant his girlfriend, Letticia Waites returning to the car, the defendant spontaneously identified her as his girlfriend, and repeated his previous assertion that she owned the car.  Second, after the defendant was in custody, as the officers were finishing the search of Ms. Waites' car, the defendant spontaneously said that "everything in the car is mine."  In neither case were any officers speaking with the defendant, nor was there any interaction with the defendant beyond the circumstances of his detention.  Therefore, there is no rational basis to claim that the defendant was being interrogated when the statements were made; rather, the defendant spontaneously volunteered the statements, once he realized the officers had discovered the drugs in the car.

### DEFENDANT'S STATEMENTS MADE PRIOR TO HIS ARREST DO NOT IMPLICATE *MIRANDA*

Custodial interrogation has long been defined as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." (*Miranda v. Arizona*, 384 U.S. 436, 444 (1966).)

In *Oregon v. Mathiason*, 429 U.S. 492 (1977) the Court held:

> [P]olice officers are not required to administer *Miranda* warnings to everyone whom they question. Nor is the requirement of warnings to be imposed simply because the questioning takes place in the station house, or because the questioned person is one whom the police suspect. *Miranda* warnings are required only where there has been such a restriction on a person's freedom as to render him "in custody." It was that sort of coercive environment to which *Miranda* by its terms was made applicable, and to which it is limited.

(*Id*. at p. 495.)

When determining whether a suspect is in custody for purposes of *Miranda*, the court must take into account all of the circumstances surrounding the questioning. "[T]he ultimate inquiry is simply whether there [was] a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." (*California v. Beheler*, 463 U.S. 1121, 1125 (1983); see also *Stansbury v. California*, 511 U.S. 318, 322 (1994).)

The test is entirely objective. Whether a person is in custody depends on the objective circumstances of the interrogation rather than on the subjective view of either party. (*Stansbury v. California*, *supra*, at p. 323.) "Where no formal arrest takes place, the relevant inquiry . . . 'is how a reasonable man in the suspect's position would have understood his situation.' " (*Berkemer v. McCarty* 468 U.S. 420, 442 (1984).)

The *Miranda* custody test was well described in *Thompson v. Keohane*, 516 U.S. 99 (1995).

> Two discrete inquires are essential to the determination: first, what were the circumstances surrounding the interrogation; and, second given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave. Once the scene is set and the players' lines and action are reconstructed, the court must apply an objective test to resolve the ultimate inquiry: was

> there a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest. [Citations.] the first inquiry all agree, is distinctly factual. . . . The second inquiry, however, calls for the application of the controlling legal standard to the historical facts.

(*Id*. at p. 112, internal quotation marks omitted.)

The United States Supreme Court has never offered lower courts a shopping list of objective factors relevant to determining custody. But the courts tend to rely on a number of objective factors, including: (1) whether the suspect has been formally arrested or the objective indicia of arrest are present; (2) absent formal arrest, the length of the detention or contact; (3) the site or location of the interrogation; (4) the ratio of officers to suspects; (5) the demeanor of the questioning officers; (6) the length, nature, and form of questioning; and (7) whether the investigation has focused on the suspect (as would have been perceived by a reasonable person). The totality of circumstances controls - no one factor is dispositive. (See *e.g.*, *Yarborough v. Alvarado*, 541 U.S. 652 (2004).)

Furthermore, the United States Supreme Court has made it clear that focus of suspicion is only a single circumstance amongst many, and is an objective factor independent of the subjective views of either the officer or the person being interviewed. A line of cases from *Beckwith v. United States* 426 U.S. 341, 345 (1976), through *Minnesota v. Murphy* 465 U.S. 420, 430 (1984), to *Stansbury v. California*, *supra*, 511 U.S. 318, firmly establish "that an officer's subjective and undisclosed view concerning whether the person being interrogated is a suspect is irrelevant to the assessment whether the person is in custody." (*Id*. at p. 319.) Subjective belief is important only to the extent it is communicated or otherwise manifested to the person being questioned. Even then, such belief is relevant "only to the extent [it] would affect how a

reasonable person in the position of the individual being questioned would gauge the breadth of his or her . . . freedom of action. [Citation.]"  (*Id.* at p. 325.)

The Supreme Court has repeatedly distinguished custodial arrest from lesser detentions that are often associated with early stages of an investigation.  In the present case, when officers directed the defendant out of the vehicle, the defendant was clearly detained.  At that point though, the detention was minimal; the defendant was restrained only to the degree necessary to allow the preliminary investigation to proceed safely and efficiently.  Because this was not "custody equivalent to arrest," no *Miranda* warning was required at this point.

### DEFENDANT'S STATEMENTS MADE AFTER PROPER ADVICE OF RIGHTS NEED NOT BE SUPPRESSED

Admittedly, custodial interrogation must cease if the suspect unambiguously indicates before or during questioning that he or she wishes to remain silent or wants an attorney.  (*Miranda v. Arizona* (1966) 384 U.S. 436, 473-474; *Davis v. United States* (1994) 512 U.S. 452.)

Where, however, the proper advice of rights is given prior to statements being made, and where a defendant has waived those rights, the resulting statements need not be suppressed.  Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed.  The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently. (*Miranda v. Arizona*, supra, at 444.)

Furthermore, there is no inflexible per se rule requiring that an explicit statement

of waiver is invariably necessary to support a finding that the defendant waived the right to remain silent or the right to counsel guaranteed by the Miranda case. (*North Carolina v. Butler*, 441 U.S. 369, 375-376 (1979).) "Even when a right so fundamental as that to counsel at trial is involved, the question of waiver must be determined on "the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938). See also, *United States v. Washington*, 431 U.S. 181, 188 (1977); *Schneckloth v. Bustamonte*, 412 U.S. 218 (1973); Frazier v. Cupp, 394 U.S. 731, 739 (1969).

In the present case, officers read the standard four-question summary of rights to the defendant immediately after the contraband drugs were found in his girlfriend's car and he was arrested. The defendant then waived those rights both explicitly, and implicitly by his responses to the officers at the scene. Because the defendant was properly advised, and because the defendant waived his rights as required under Miranda, these statements need not be suppressed.

WHEREFORE, the government respectfully requests that the Court deny defendant's motion.

Respectfully submitted,

JEFFERY A. TAYLOR
United States Attorney

  /s/ William L. Woodruff
WILLIAM L. WOODRUFF
Assistant United States Attorney
Federal Major Crimes Section
DC Bar number: 481-039
555 4th Street, N.W.  #4840
Washington, DC 20530
(202) 307-6080; Fax: 353-9414
William.Woodruff2@usdoj.gov

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I caused a copy of the foregoing to be served upon the attorney for the defendant, Danielle Jahn, this 23rd day of July, 2008.

_____/s/_____
William L. Woodruff
Assistant United States Attorney

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | |
| : | **CRIMINAL NO. 08-101 (JDB)** |
| **v.** : | |
| : | |
| **QUENTON LOFTON,** : | |
| : | |
| **Defendant.** : | |

# ORDER

Upon reconsideration of the Defendant's Motion to Suppress Statements, and the United States Opposition thereto, and the record herein, it is this _____ day of _____, 2008, hereby

ORDERED, that defendant's motion be denied.

_____
UNITED STATES DISTRICT JUDGE