UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.   )<br>)<br>QUENTON LOFTON   )<br>) | Criminal No.: 08-101(JDB) |

**DEFENDANT'S MOTION TO EXCLUDE GOVERNMENT'S
EXPERT TESTIMONY**

Defendant, Quenton Lofton, through undersigned counsel, respectfully moves the Court to exclude the government's proposed expert testimony. As grounds for his Motion, Mr. Lofton states the following;

1. Mr. Lofton is before the Court charged in a two-count indictment with Count One - Unlawful Possession With Intent to Distribute 100 Grams or More of Phencyclidine, in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(B)(iv); and Count Two - Simple Possession of a Controlled Substance, in violation of 21 U.S.C. § 844(a). The charges arose out of an incident that occurred on March 15, 2008.

2. The government has provided notice that it intends to introduce expert testimony through Detective Anthony Washington. According to the government's notice the expert will testify in reference to the following:

    a.    the methods for processing, packaging, selling, transferring and trafficking narcotics in the District of Columbia, including, but not limited to, the roles different participants in the drug scheme.

    b.    The methods used to distribute narcotics in the District of Columbia, including

1

  but not limited to: the reasons for such methods (including strategies used to avoid detection and avoid loss of money or narcotics); the pricing and packaging of narcotics, both for wholesale and retail; and the common dosage of, usable and measurable amounts, and strength of narcotics.

 c. That possession of narcotics for use can be distinguished from possession of narcotics with intent to distribute, and that possession of numerous individually packaged narcotics, or possession of fewer packages but accompanied by other indicia of sale, is generally more consistent with intent to distribute than mere possession for personal use.

In its letter the government also emphasizes that Detective Washington will be asked to testify and opine on the following topics:

"Whether street level drug sales follow certain general patterns, whether street level drug sales often involve multiple participants, the different roles played by different participants in a typical street level sale, whether these roles can be combined, why drug dealers often work with people and why the roles are assigned to separate individuals, how drug users may participate in drug sales, whether it is common for a drug seller not to have the stash on their person at the time of their arrest."

The government's notice includes additional opinions in a wide-ranging area of drug distribution that it may elicit from Detective Washington.[1] In its letter the government also summarizes the opinions of Detective Washington regarding specific facts of this case. See Page 3 of Gov. Notice. It appears that the latter summary is a preview of what the government intends to elicit regarding the packaging and intended sale of the PCP that was contained in the 8 ounce bottle.

Mr. Lofton opposes the introduction of the proffered testimony.

**ARGUMENT**

I. **THE GOVERNMENT'S REQUEST TO INTRODUCE EXPERT TESTIMONY SHOULD BE DENIED PURSUANT TO FEDERAL RULES OF EVIDENCE 702 401, AND 403 AND DAUBERT v. MERRELL DOW PHARMACEUTICALS**

Mr. Lofton moves to exclude the proposed expert testimony pursuant to Federal Rules of Evidence 702, 404, 403 and Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993) and Kumho Tire v. Carmichael, 526 U.S. 137 (1999). When faced with a proffer of expert

---

[1] The government's notice is attached as exhibit 1.

testimony, the court must make a preliminary determination as to all of the requirements pursuant to Rule 702. <u>Daubert</u> 509 at. 592. Pertinent to the instant case, is <u>Kumho Tire Co. v. Carmichael</u>, 526 U.S. 137, 147 (1999) where the Supreme Court made it clear that the district court's duty to act as gatekeeper and to assure the reliability of expert testimony before admitting it applies to all expert testimony, not merely scientific expert testimony.

> Rule 702 of the Federal Rules of Evidence provides:
>
> If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The government's first task, then, is to show that the expert possesses "specialized knowledge [that] will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Thus, the government must establish that its expert's testimony will address an issue beyond the common knowledge of the average layperson. The government's burden before the jury is to prove that Mr. Lofton had the specific and knowing intent that the PCP that was found in someone else's car was packaged for distribution, and was not possessed for personal use. Count one of the indictment charges a discrete crime, possession with intent to distribute PCP, that took place on March 15, 2008.

It is anticipated that the government will introduce witness testimony, and tangible evidence (the PCP and assorted paraphernalia), all which is available to the government, to show that Mr. Lofton satisfied the elements of the charged criminal offense. Seen in that light, the expert's proposed testimony will not "assist the trier of fact to understand the evidence or to

determine a fact in issue." Id. In fact, the operative facts count one are such that "[t]he jury [will be] just as capable of drawing correct conclusions as the witness possessed with special training, [thereby making the] expert testimony [] unnecessary." United States v.Washington, 106 F.3d 983, 1009 (D.C. Cir. 1997) (quoting United States v. Fadayini, 28 F.3d 1236, 1241 (D.C.Cir.1994)).

While expert testimony may be adduced pursuant to Fed. R. Evid. 702. Such evidence must, however, be relevant. Fed. R. Evid. 401. Specifically, with respect to experts, their testimony must be relevant to a material fact. See, e.g., Unrein v. Timesavers,Inc., 394 F.3d 1008, 1011 (8th Cir. 2005). "'Relevant evidence'" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401; United States v. Doe, 903 F.2d 16, 20-21 (D.C. Cir. 1990). Far from being relevant the proposed testimony regarding the universe of the PCP trafficking in the Washington D.C. area would be highly prejudicial in violation of Fed. R. Evid. 403.

Detailed opinions and conclusions regarding the narcotic distribution trade, network, manner of packaging, packaging, and the roles of participants among the other topics that the government included in their notice are not "facts of consequence." Likewise, opinions and conclusions in reference to the following topics are not facts of consequence.

> "Whether street level drug sales follow certain general patterns, whether street level drug sales often involve multiple participants, the different roles played by different participants in a typical street level sale, whether these roles can be combined, why drug dealers often work with people and why the roles are assigned to separate individuals, how drug users may participate in drug sales, whether it is common for a drug seller not have the stash on their person at the time of their arrest."

Mr. Lofton is charged with a specific intent crime, possession with intent to distribute

PCP. The government's proposed expert testimony regarding the universe of drug distribution is irrelevant. The central – but simple – issue here is: Did Mr. Lofton unlawfully possess with the intent to distribute a controlled substance. This proposed "expert" testimony will result in confusion of the jury by injecting irrelevant and highly inflammatory and prejudicial matters into the trial. The universe of drug distribution is irrelevant to the charged offenses. Mr. Lofton here is not on trial for being a member of a trafficking organization of which there is no evidence. He has a constitutional right to "be tried for what he did, not for who he is." United States v. Linares, 367 F.3d 941, 945 (D.C. Cir. 2004) (quoting United States v. Daniels, 770 F.2d 1111, 1116 (D.C. Cir. 1985).

The government's expert testimony is neither relevant, needed and is instead highly prejudicial in its effort to link Mr. Lofton to the pervasive and extensive world of narcotic trafficking in the District of Columbia. Because, the government's proposed testimony is prohibited by the Federal Rules of Evidence, the substantive law and by our Constitutional guarantees to due process of law, the Court should denied the government's proposed expert testimony.

Respectfully submitted,

A.J. Kramer
Federal Public Defender

_____/s/_____
Dani Jahn
Carlos J. Vanegas
Assistant Federal Public Defenders
625 Indiana Ave., N.W., Suite 550
Washington, D.C. 20004
(202) 208-7500



**U.S. Department of Justice**

Jeffrey A. Taylor
United States Attorney

*District of Columbia*

---

*Judiciary Center*
*555 Fourth St., N.W.*
*Washington, D.C. 20530*

July 30, 2008

Danielle Jahn, Esq.
Assistant Federal Public Defender
615 Indiana Avenue, N.W.
Suite 550
Washington, D.C. 20004

     Re:  *United States v. Quenton T. Lofton*
        Case No. 08-101 (JDB)

Dear Ms. Jahn:

  This letter constitutes expert notice regarding narcotics testimony to be proffered at trial in the government's case-in-chief. Trial is set for August 20, 2008.

  The United States expects to call Detective Anthony Washington as a narcotics expert in this case (however, if Detective Washington is unavailable on the day of trial, the government may call Detective Wayne Knox, as set forth in its discovery letter).

  Detective Washington has been a police officer for more than 20 years. In September 1988, Detective Washington was assigned to the Fourth District vice unit as a narcotics investigator. In March 1990, Washington was assigned to the Narcotic Special Investigation Division of the Metropolitan Police Department as a narcotics detective. In November 1992, Washington was detailed to the United States Department of Justice, Drug Enforcement Administration as a Task Force Officer, where he remained until January 7, 2000. Detective Washington has served as a Superior Court Resident Narcotics Expert since January 7, 2000, and has testified as an expert many times.

  In this case, the United States expects to call Detective Washington to testify about the following specific topics, although the government reserves its right to ask Detective Washington to testify about any of the topics set forth in its initial discovery letter dated May 8, 2008:

  a.  The methods for processing, packaging, selling, transferring and trafficking narcotics in the District of Columbia, including, but not limited to, the roles of different participants in drug trafficking scheme.

b.  The methods used to distribute narcotics in the District of Columbia, including but not limited to: the reasons for such methods (including strategies used to avoid detection and avoid loss of money or narcotics); the pricing and packaging of narcotics, both for wholesale and retail; and the common dosage of, usable and measurable amounts, and strength of narcotics.

c.  That possession of narcotics for use can be distinguished from possession of narcotics with intent to distribute, and that possession of numerous individually packaged narcotics, or possession of fewer packages but accompanied by other indicia of sale, is generally more consistent with intent to distribute than mere possession for personal use.

Detective Washington will base his opinions on these topics on his years of training and experience in the area of drug investigations. For example, Detective Washington has participated in hundreds of police investigations relating to narcotics, including buy-bust operations, and observation post operations. As a result of his extensive experience, Detective Washington will be asked to testify in this case about, *inter alia*, **whether street level drug sales follow certain general patterns, whether street level drug sales often involve multiple participants, the different roles played by different participants in a typical street level sale, whether these roles can be combined, why drug dealers often work with other people and why the roles are assigned to separate individuals, how drug users may participate in drug sales, whether it is uncommon for a drug seller not to have the stash on their person at the time of their arrest.**

Detective Washington has expressed the opinion that street level drug sales often involve multiple participants and follow general patterns. Detective Washington has described the different roles that individuals may play in a typical street level sale. Detective Washington has expressed the opinion that when three persons are involved in a distribution, the person who interacts with the purchaser is likely compensated by the purchaser. He explains that the middle person is likely compensated by the person who holds the drugs. The person who holds the stash is able to distance himself from the purchaser through two people, an effective method of trying to insulate himself. Detective Washington may also express the opinion that an individual who is simply a drug user, may also direct a potential buyer to other individuals on the street in exchange for additional drugs or money.

Detective Washington has explained that an individual who distributes narcotics has an interest in protecting their supply of narcotics and their earnings from the sale of narcotics from seizure by the police, as well as from seizure in a robbery or theft. Accordingly, an individual, for example, might store his or her money and/or narcotics in a hidden stash, use lookouts to give notice them when the police are working in the area (to allow time for the individual to hide or dispose of potential evidence of the crime), or might only carry and sell narcotics in small quantities. Therefore it is not uncommon for an individual who is arrested for distributing narcotics, not to have additional narcotics or money on their person.

Detective Washington has expressed the opinion that the 8 ounce "Realime" bottle of PCP (lab number LQ 239) is a common means of packaging for mid-level distribution of PCP, and it is most likely that this 8 ounce quantity would be repackaged into smaller containers (typically 1/2 or 1 ounce bottles) for street-level distribution. He stated that the smaller bottles recovered in this case were consistent with the size and type of packaging used for street-level distribution of "dippers" (cigarettes dipped in a solution contianing PCP.) He further states that the concentration of PCP in this case is higher than average. Detective Washington estimates that the 8 ounce bottle of PCP would have a wholesale value of approximately $2400 to $2800; and once the PCP was repackaged, street-level dealers would pay approximately $500 for a 1 ounce bottle, or $250-300 for a 1/2 ounce bottle. A one-ounce bottle of PCP is typically enough to produce 80-100 "dippers," which have a street value of $20 to $24.

Detective Washington has expressed the opinion that the two ziplocks of marijuana (lab number LQ 241) are common amounts for street-level distribution to individual users of marijuana. Detective Washington has also expressed the opinion that the marijuana "blunt" (lab number LQ 242) is a common form of distribution and use of marijuana by individual users in the District of Columbia.

Detective Washington may be found in the Drug Expert office on the C-level of the D.C. Superior Court building. You may contact him by calling 202-616-5549/5547 or visit him at the above location between business hours (8:30 a.m to 5:00 p.m.). Detective Washington is available to defense counsel as well as government counsel. I am also attaching a copy of Detective Washington's resume.

If you have any questions or concerns regarding this case, please do not hesitate to contact me at (202) 307-6080. I will look forward to receiving information about the opinions and qualifications of any drug expert you intend to call in a timely manner. Please also send me a copy of any such expert's resume. I can be reached by fax at 202-353-9414.

Very Truly Yours,

William L. Woodruff
Assistant United States Attorney
Federal Major Crimes Section
202-307-6080