## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | **Criminal Case No. 08-101 (JDB)** |
| | : | |
| **QUENTON LOFTON,** | : | |
| | : | |
| Defendant. | : | **Trial date: August 20, 2008** |
| | : | |

### GOVERNMENT'S RESPONSE TO DEFENDANT'S
### MOTION TO EXCLUDE EXPERT TESTIMONY

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully requests that the Court deny defendant Quenton Lofton's motion to exclude expert testimony.  In support of this motion, the United States relies upon the points and authorities set out in this memorandum and at any hearing on this matter.

I.      **FACTS**

The defendant is charged in a two-count indictment with drug charges stemming from his actual and/or constructive possession of PCP and marijuana found in his girlfriend's car, in which he was the sole occupant of the vehicle when it was first seen parked in an alley behind the 200 block of I Street, S.W., Washington, D.C.

On March 15, 2008, at approximately 8:25 p.m., Metropolitan Police Department NSID-GRU Officers drove into an alley next to some apartment buildings in the 200 Block of I Street, S.W., Washington, D.C.  While at that location, officers made contact with the defendant, Quenton Lofton, who was sitting in a white Chevrolet Prism.  During this initial contact, officers saw the defendant move a black sock containing an unidentified object into the center console of

the car.

In a subsequent search of the vehicle, officers found that the object in the black sock was an 8-fluid ounce "ReaLime" bottle containing a liquid substance containing phencyclidine (PCP). Additional items discovered in the search of the car included a hand-rolled "blunt" that contained marijuana, two plastic bags containing marijuana, a plastic bag containing 4 empty 1-ounce bottles and 7 empty 1/2-ounce bottles, two cigars, and an opened pack of Newport cigarettes.

Defendant was arrested, and has since been indicted for possession of an amount greater than 100 grams of a substance containing phencyclidine, and possession of marijuana.  In preparation for trial, the government provided notice regarding two experts whose testimony is anticipated at trial.

Defendant now challenges the relevance of one of those proffered experts.  The challenged expert, Detective Anthony Washington, is offered as an expert on the means and methods of drug use and distribution[1] in the District of Columbia, including testimony as to pricing, packaging, and quantities typically seen at differing levels of distribution.

Defendant complains that the proffered expert testimony "will not assist the trier of fact to understand the evidence or to determine a fact in issue." (Defendant's motion at 3, internal citation omitted.)  Defendant posits that "[t]he jury [will be] just as capable of drawing correct conclusions as the witness possessed with special training, [thereby making the ] expert testimony [] unnecessary." (Defendant's motion at 3, quoting *United States v. Washington*, 106

---

[1]Specific testimony in this case would be limited to phencyclidine and marijuana.

F.3d 983, 1009 (D.C. Cir. 1997)[2].

Contrary to defendant's assertions, the proffered expert testimony in this case is necessary to the jury's full and fair understanding of the evidence to be presented in this case. Defendant's motion must therefore be denied.

## II.    ARGUMENT

### THE PROFFERED EXPERT TESTIMONY IS PROPER
### AND SHOULD BE ALLOWED TO ASSIST THE TRIER OF FACT

Defendant's motion properly cites to Federal Rules of evidence 702, 401, and 403 as defining the legal standards for determining whether an expert witness shall be allowed to testify at trial.[3]

A.    Testimony of a narcotics expert is *generally* admissible where such testimony will assist the trier of fact.

Testimony of narcotics experts is generally admissible to assist a trier of fact in

---

[2]The expert proffer in *Washington* was a wholly different matter than the proffer now challenged in the case before this court. In *Washington*, which was a case about a sting operation targeting corrupt police officers, the defendant offered two experts at trial. The first was an advisor to law enforcement agencies on corruption training, who would have testified that MPD police training was insufficient to prepare young police officers to identify and resist corrupt overtures. The other expert was an officer from Arizona, who had set up many sting operations, and who would have testified that the design and implementation of the sting operation in question created a coercive environment and effectively limited the young officers' realistic options to resist. The *Washington* Court held that the proffered expert testimony was not necessary to aid the jury's understanding of the facts and circumstances of the case, "because it pertained to matters well within the jurors' knowledge." (*Washington*, at 1009.)

[3]Defendant's motion also makes passing reference to Fed. R. Evid. 404 (defendant's motion, page 2), but there is no elaboration on this point. The government, therefore, offers no response other than to assert that the challenged witness is not offered to opine on the defendant's character.

understanding the significance of specific observations and items of physical evidence presented

in narcotics trials.  "Trial courts have broad discretion to determine whether expert testimony will

assist the trier of fact in understanding the evidence under Federal Rule of Evidence 702, and

whether that testimony would be relevant and not overly prejudicial under Federal Rule of

Evidence 403.  Testimony about modus operandi in narcotics operations is common, and useful

to jurors unfamiliar with the methods which drug dealers use. (*United States v. Baxter*, 896 F.2d

1383 (D.C. Cir. 1990) (internal citations omitted).)  "We believe that [the narcotics expert's]

testimony reasonably aided the jury in resolving the factual issues and its admission was not an

abuse of discretion.  Count I charged the defendant with unlawful possession of 500 or more

grams of cocaine with the intent to distribute.  Thus, facts related to cocaine trafficking were

relevant."  (*United States v. Baskin*, 886 F.2d 383, at 388 (D.C.Cir.1989)(internal citations

omitted).)

    B.    <u>Testimony of a narcotics expert is relevant to the particular facts of the present
case</u>.

Testimony of a narcotics expert is proper in the present case because the anticipated

evidence is significant in ways that the average layperson would not understand without the aid

of a subject-matter expert.

> "If scientific, technical or other specialized knowledge will assist the trier of fact to
> understand the evidence or to determine a fact in issue, a witness qualified as an expert by
> knowledge, skill, experience, training, or education, may testify thereto in the form of an
> opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the
> testimony is the product of reliable principles and methods, and (3) the witness has
> applied the principles and methods reliably to the facts of the case."

Federal Rule of Evidence 702.

Here, the government expects the evidence in this case to include testimony and physical

-4-

evidence about an 8-fluid ounce "ReaLime" bottle that was completely full of a liquid containing PCP. Without the "specialized knowledge" of the proffered expert, the average juror would not understand that an 8-ounce bottle of PCP – a bottle small enough to put into a pants pocket – is enough to provide 600 - 800 "dippers" on the street. For that matter, most jurors would very likely not know what a "dipper" is, nor would most jurors understand that a "dipper" is the most common means of selling PCP to individual users.

The government also expects to introduce evidence that officers found a plastic bag in the back of the vehicle containing 11 smaller empty bottles; officers found 4 one-ounce bottles and 7 ½-ounce bottles. Without the aid of an appropriate expert witness, the trier of fact would very likely not understand that an 8-ounce bottle of PCP would virtually never be used for street-level sales; instead, dippers are normally made at the point of sale to individual users of PCP by dipping a cigarette into a ½ or 1 ounce bottle of PCP. Furthermore, dippers may be made with either tobacco or marijuana cigarettes, which are sometimes provided by the dealer.

Without the testimony of a narcotics expert, it is unlikely that jurors would be familiar with the prices of PCP in 8-ounce bottles, 1-ounce bottles, or the price per dipper on the street; all of which may be relevant in determining whether the narcotics in question were held purely for personal use, or for wider distribution.

Furthermore, even if, hypothetically, every juror had a full and detailed knowledge of all of the aforementioned matters, they would nonetheless be prohibited from considering those facts if those facts were not properly made a part of the record and admitted into evidence in the evidentiary presentation of this case.

## THE PROFFERED EXPERT TESTIMONY IS RELEVANT
## TO THE DETERMINATION OF A FACT IN ISSUE

Defendant properly quotes Federal Rule of Evidence 401 in defining relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." In the present case, the defendant is charged in Count 1 of the indictment with possession with the intent to distribute phencyclidine (PCP). The government is thus bound to prove – and the trier of fact is bound to consider – whether the defendant had the requisite intent to distribute at the time he possessed the bottle of PCP. Evidence that the amount in question is sufficient to provide a daily user of PCP with enough PCP to last over 2 years might well assist the jury in considering whether 8 ounces of PCP would reasonably be held for one's sole personal use. Knowledge that a single 8-ounce bottle of PCP would probably cost $2000 - 2400, but would bring a return of $4000 or more when broken down into 1-ounce quantities for street-level distribution, and ultimately would bring in $12,000 or more in street sales might also be instructive.

An understanding of how PCP is packaged and distributed (both wholesale and retail) is necessary to properly consider how the quantity of PCP and the related packaging materials found in the vehicle with the defendant contribute to a reasonable assessment of the defendant's intent at the time of his arrest. This does not mean (and the government does not intent to argue) that this defendant was an integral part of any particular drug cartel. It is simply the observation that the "intent to distribute" element of Count 1 necessarily implies that the defendant was an active participant in a *general* pattern of drug distribution (specifically distribution of PCP) in the District of Columbia. Testimony as to general practices and patterns of distribution are relevant

therefore, to put the specific facts and circumstances of this case in context, and to make those

facts and circumstances more understandable to the jurors.  And again, even if these facts were

already known to one or more jurors, the facts would be barred from consideration by the jury if

not properly admitted into the record at trial.

### THE PROFFERED EXPERT TESTIMONY IS NOT UNDULY PREJUDICIAL

It is axiomatic that Federal Rule of Evidence 403 is not a bar to all evidence that is

prejudicial,[4] rather, it bars evidence "if its probative value is substantially outweighed by the

danger of *unfair* prejudice . . . ."  Fed. R. Evid. Rule 403 (emphasis added).  Here, the challenged

expert testimony will not personally attack, demean, or characterized the defendant in this case,

nor will the expert offer an opinion as to the defendant's intent.  The expert testimony will,

however, assist the jury in understanding the significance of particular items of physical evidence

individually, and in relation to each other.  Because this understanding is a necessary foundation

for the jury's independent finding as to the the defendant's intent, the testimony is not *unfairly* or

*unduly* prejudicial.  Thus, Federal Rule of Evidence 403 does not preclude admission of this

expert's testimony.

WHEREFORE, the government respectfully requests that the Court deny the defendant's

motion.

Respectfully submitted,

JEFFERY A. TAYLOR

---

[4]"Prejudicial" is properly defined as simply being "harmful to someone or something."
Thus, any relevant evidence must be prejudicial either to the defendant's case or to the
government's case.  By its plain language, Rule 403 only bars evidence that is *unfairly*
prejudicial, *confusing*, or *misleading*.

United States Attorney

  /s/ William L. Woodruff
WILLIAM L. WOODRUFF
Assistant United States Attorney
Federal Major Crimes Section
DC Bar number: 481-039
555 4th Street, N.W.  #4840
Washington, DC 20530
(202) 307-6080; Fax: 353-9414
William.Woodruff2@usdoj.gov

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **CRIMINAL NO.  08-101 (JDB)** |
| v. | : | |
| | : | |
| **QUENTON LOFTON,** | : | |
| | : | |
| Defendant. | : | |

## <u>ORDER</u>

Upon consideration of the Defendant's Motion to Exclude Expert Testimony, and the United States Opposition thereto, and the record herein, it is this _____ day of August, 2008, hereby

ORDERED, that defendant's motion is denied.

_____
JOHN D. BATES
UNITED STATES DISTRICT JUDGE